VAN INGEN & CO. v. UNITED STATES (No. 1113).[1]

ADDITIONAL DUTY.

> The importers were embarrassed in stating the actual market value of their merchandise, but they elected to enter the woolens and cottons here with the additions of a penny a yard for dampage and 10 per cent for shrinking. A notation that this was done under duress does not make a case of duress. No unlawful demand was made on the importers, and what they did was done freely and voluntarily to fix the entered value of the goods.

United States Court of Customs Appeals, May 29, 1913.

APPEAL from Board of United States General Appraisers, G. A. 7433 (T. D. 33193).

[Affirmed.]

*Brown & Gerry* for appellants.

*William L. Wemple*, Assistant Attorney General, for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

The appellants in this case in the course of their business imported at the port of New York certain woolens and cottons for the manufacture of men's wear. Some of the goods were in full pieces of 50 yards and others in lengths cut from full pieces. After entry, and apparently on the claim that some of the goods had been cut into lengths and all of them shrunk after invoicing, the appraiser, to make market value, subjected the merchandise to an addition of a penny a yard for dampage or shrinking and the lengths to a further addition of 10 per cent for cutting. From this action of the appraiser an appeal to reappraisement was taken by the importers. While the issue raised by that proceeding was still undecided the woolens and cottons which are here the subject of controversy arrived, and as they were apparently similar in all respects to those upon which the appraiser had imposed additions to make market value, the problem of what entry should be made was presented to the importers for solution. On the one hand, if the importation was entered with the additions to make market value, it might turn out that the additions constituted no part of market value, with the result that the import-

---

[1] Reported in T. D. 33520 (24 Treas. Dec., 973).

ers would be called upon to pay duty on a market value in excess of the true market value, inasmuch as duty could not be taken on less than the entered value. On the other hand, if the importers failed to make the additions, there was danger that the General Appraisers might hold such additions to be a part of market value, in which case the importers would be required to pay not only the duty assessed on a market value which included the additions, but also the heavy additional duties prescribed by subsection 7 of section 28. It must be admitted that for the importers this was an embarrassing dilemma, but it was the embarrassing dilemma which arises from the law requiring them to prove the market value of their own goods and which confronts every importer of merchandise. Whichever alternative was chosen might inflict loss, and knowing this the importers, choosing probably what they thought the lesser of two evils, freely, voluntarily, and as their own act and deed, with no constraint upon them other than that which the law itself imposed, elected to enter the woolens and cottons imported with the additions of a penny a yard for dampage and 10 per cent for shrinking.

True, the importers did make the notation on the entry—

Importer adds to make market value as claimed by the United States appraiser on previous invoices, but importer claims this addition is made under duress in order to avoid delay and possibly additional duties pending litigation before the board of United States appraisers.

So far as we can find, however, there is not the slightest pretense that the importers were obliged by the collector of customs, or any officer clothed with authority, to prepare their entry in any particular form or that they were put under any compulsion whatever to make any entry other than that which they chose to present. On the contrary, they were expressly notified in writing by the deputy collector that they might enter the merchandise covered by the entry at any value which they might desire. No unlawful demand or requirement was made of the importers by the collector or his subordinates and if the former acted under any constraint or compulsion it was the constraint and compulsion induced by their own fears that the law might ultimately be interpreted against them by the board and the courts.

Had the collector forced the importers to include in their entry admissions which they did not desire to make, or had he refused to receive their entry unless they excluded from it declarations which they deemed it proper to include for their protection in case of dispute as to the duties imposed, some claim of duress might have been made within the reasoning of Stein *v*. United States (1 Ct. Cust. Appls., 36; T. D. 31007), and of Stein *v*. United States (1 Ct. Cust. Appls., 478; T. D. 31525). Such conduct on the part of the collector might amount to an illegal exaction under color of

official authority, and as possession of the goods was dependent on compliance duress might well be asserted. Here, however, no unlawful demand as to their entry was made on the importers by the customs officers, nor were they led to believe by any course of conduct on the part of the collector that they were not free to make their entry in the form which they might deem best adapted to the protection of their legal rights. The entry they made was their entry—not that of the collector—and if they declared a market value higher than that which they really believed to be the true market value, they did so, we think, not by reason of the intervention of the collector, but rather because an error of judgment would result in the imposition of additional duties. The duties were assessed on the entered value, voluntarily made, in our opinion, and the protests were therefore properly overruled.

The decision of the Board of General Appraisers is *affirmed*.