COLONIAL IMPORT & EXPORT CO. *v.* UNITED STATES (No. 1178).[1]

DURESS—WHAT IS NOT.

The importers had been warned that the entered value of their brierwood was lower than that of other importers and that unless the value was advanced penalties for undervaluation would be exacted. The importers were by this warning required to do nothing more than the law itself obliged; they were subjected to no unlawful demand and consequently to no duress.

United States Court of Customs Appeals, February 5, 1914.

APPEAL from Board of United States General Appraisers, Abstract 31821 (T. D. 33304). [Affirmed.]

*Walter Evans Hampton* for appellants.
*William L. Wemple,* Assistant Attorney General, for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

It appears from the record in this case that about the month of July, 1911, certain brierwood blocks for the making of pipes, imported by the Colonial Import & Export Co. at the port of New York, were passed by the appraiser at their entered value. After the brierwood blocks had been released by the customs officials the examiner, who is charged with the duty of noting on the invoice for the appraiser the value of such goods, sent for one of the importers and in the appraiser's office notified him that the goods had been entered at lower prices than those at which similar goods had been entered by other importers. The examiner further stated that if the company did not advance the value of such goods a penalty might be incurred which would result in a good deal of money loss. To this the representative of the importers responded that the passed goods had been correctly entered and that subsequent importations would be entered at the price paid for them and no more.

In August the Colonial Import & Export Co. imported three additional shipments of brierwood blocks and entered them at the New York customhouse at the invoice value, whereupon the company was notified that the entered value was too low, and that it

---

[1] Reported in T. D. 34190 (26 Treas. Dec., 268).

would be advanced to a value carrying a high penalty for undervaluation. The advance was made and was followed by an appeal to reappraisement. In October and November, and apparently while the reappraisement proceedings on the August shipments were still pending, two additional shipments of similar merchandise, consigned to the Colonial Import & Export Co. arrived at New York. The October importation was invoiced at 8,604.75 francs, at which sum it was entered, with an addition of 3,594.15 francs to make market value. The November importation was invoiced at 9,368.50 francs, to which was added 4,949.63 francs to make market value. Both additions were made on the basis of the unit value theretofore asserted by the examiner to be the true value and each addition was accompanied by a protest against the payment of duty thereon. In both cases duty was collected on the invoice value as advanced in the entry. The importing company protested that it had been compelled to make the additions under duress to obtain possession of of its goods and to avoid the payment of penalties. The Board of General Appraisers overruled the protests and the importers appealed.

Counsel for the appellant argues that the decision of the board should be reversed on the ground that the additions to the entry were made by the importing company under duress and that consequently the entry value certified to the appraiser was not its voluntary act. The duress which it is claimed rendered the entry involuntary and therefore not binding on the importers was not of the kind implying physical compulsion, but rather an improper moral constraint which compelled the importers to submit to an illegal demand in order to obtain possession of their goods. If, therefore, the release of the brierwood blocks by the customs officials was, under color of authority, made conditional on compliance with any unlawful demand or exaction on their part, there was duress, and the appellant is entitled to relief. On the other hand, if no illegal demand was made and the importers were required to do no more than the law obliges, then there was no duress of goods, and the decision of the board should be affirmed.

So far as we are able to gather from the record, the company was simply warned that its entered value of brierwood blocks was lower than that of other importers and that unless the value was advanced penalties for undervaluation might be exacted. The statement made by the examiner that he believed the goods carried a higher market value than that at which they were entered, coupled with the admonition that any undervaluation would result in a penalty, was not a demand or exaction in any sense of the word, but rather a timely notice of his state of mind, which might result in saving penalties on subsequent entries. Far from being an act of oppression, which duress always implies, the warning of the examiner was a friendly act from which no other consequence should have naturally followed than a careful verification of entry values. But if the

statement of the examiner, followed as it was by an advance on the August shipments, could be considered as a demand, it was not an illegal demand. If it can be regarded as a demand at all, which we do not concede, it was a demand which put no moral constraint on the importers to do anything more than right conscience and the law required and left them free to make any entry which they chose.

In making the entries of October and November the importers were no more menaced by the threat of penalties which the law imposes for undervaluation than they were when they entered their goods in July and August, and knowing the actual market value of their goods, as the importers must be presumed to have known it, the statement of such value, as they truly knew it, was just as potent in one month as another to avoid the consequences of undervaluation. In other words, without being told of it by the examiner, they knew in August, as they knew in July, that undervaluation meant penalties, and what they were told by the examiner put them under no more compulsion in making the entries of October and November than did the law itself or the knowledge of the value which they were presumed to have. Had the customs officials declined to receive the entries unless presented in a form which it was illegal to require, or had they demanded that to make market value some item be added which was or might be held lawfully no part of market value, then the importers might well have complained of duress, because release of the imported goods from customs control would have been conditioned on importers' compliance with an unlawful demand. That is not this case, however, and as the importers were required to do nothing more than the law itself obliged, they were subjected to no unlawful demand and consequently to no duress. That there is no duress when a person is subjected to no other compulsion than a demand that he do that which legally he ought to do is sustained by all the authorities to which our attention has been called.

In our opinion none of the cases cited by the appellants sustain their contention. In Maxwell *v.* Griswold (10 How., 241) Griswold, the importer, purchased certain goods in Manila which were invoiced at $38,197.95, their market value at the time of purchase. The collector of customs at the port of New York asserted that the market value of the goods was not their market value at the time of purchase, but their market value at the time of exportation, and informed Griswold that unless he entered them at the sum of $47,662.95, their value as of the date of exportation, they would be appraised at that sum in accordance with the rule prevailing in the New York customhouse, and that in consequence the importer would be required to pay penalties in order to get possession of his property. Griswold protested against making any such entry, but made it in order to save forfeiture and additional duties. The court held that the true market value of the goods under the statute was their value as of the date of purchase, and not as of the date of exportation, and that the collector's demand

that the merchandise should be entered at the market value on the date of exportation was an illegal demand which put the importer under duress.  In Robertson *v.* Frank Bros. Co. (132 U. S., 17), the importers, in order to make market value, were compelled to add an item for shipping charges, amounting to 140.38 pesos, and also an item for transportation charges, amounting to $1,465.87.  The court held that the shipping charges and transportation charges were not elements of market value and that the requirement of the appraiser that they should be made a part of market value in the entry was illegal and constituted a moral duress which entitled the importers to relief.

In Stein *v.* United States (1 Ct. Cust. Appls., 36; T. D. 31007, and 1 Ct. Cust. Appls., 478; T. D. 31525), it had been the practice of collectors of customs to add 2½ per cent commission on all Bradford goods to make market value.  Stein, in making out entries of Bradford goods through his broker, added the item of 2½ per cent to make market value, with the notation that it was added "under duress." The collector refused to accept the entry.  The broker then presented an entry with the notation "Add 2½ per cent commission," which was also refused by the collector.  An entry was next offered containing the notation "Add 2½ per cent commission to make market value."  This entry was likewise rejected by the collector, who insisted that the word "commission" be stricken out.  With the knowledge that the appraisers would add the 2½ per cent as a part of market value and that penalties would result from the advance the importers changed the entry to conform to the demands of the collector.  This court held that the 2½ per cent commission was a nondutiable item and that the demand of the collector that it should be included for dutiable purposes was an illegal act subject to correction.  In all three of these cases it is apparent that the importers were put under constraint to enter as market value something which was not market value at all and that they were therefore subjected to an illegal demand, compliance with which was in effect a condition for the release of their goods and consequently amounted to duress.

The decision of the Board of General Appraisers is *affirmed.*