(C. D. 221)

GREAT WESTERN MERCANTILE CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 6, 1939)

*Harper & Harper* (*Abraham Gottfried* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Daniel G. McGrath*, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

EVANS, Judge: This is an action against the United States in which the plaintiff seeks to recover money claimed to have been illegally collected in excess of the amount due upon an importation of merchandise into the port of Los Angeles, Calif. On or about the 5th of August 1936, the M/S *Mitwo* arrived at that port carrying, among other merchandise, a shipment of willow baskets (fisherman's creels) consigned to the plaintiff herein, who had been advised that while the *Mitwo* was en route to Los Angeles a fire had occurred in the hold whereupon it (the plaintiff) instructed its customhouse brokers to prepare and file an appraisement entry covering the shipment in question as provided in section 498 (a) (2) of the Tariff Act of 1930. In accordance with said instructions such an entry was prepared, was presented to the entry division of the customhouse, was accepted, and on August 6 instruction was given to the inspector to transmit 1 package from bales 1/2 and 1 package from 3/6 to the appraiser's stores, and on that date, according to the inspector's report, such packages were so transmitted, viz, Nos. 1 and 6. Thereafter the collector of customs at the port of entry directed the importer to make a consumption entry of the merchandise, whereupon the broker, claiming to have acted under duress, made such an entry which likewise was accepted by the collector's office. On this entry a value of 498.94 yen was given. Thereafter both the appraisement entry and the consumption entry proceeded to appraisement. The consumption entry, however, shows the merchandise to have been appraised under date of August 26, 1936, as entered, while the appraisement entry carries the red-ink notation "Damage—fire & water" and under the column headed "Value" appears the word "none." This appraisement was made on August 31, 1936. The red-ink stamps on both the consumption and appraisement entries show that both of them were verified by the Comptroller of Customs on the same date, January 18, 1938. Both entries carry a red-ink notation to the effect that the same was canceled, the notation on the consumption entry being "Cancelled to Appsmt. Entry 53," which cancelation is crossed out in red ink, while on the appraisement entry appears the notation "Cancelled—See C. E. 1273, 8/10/36." Both entries carry a stamp of liquidation, the consumption entry having been liquidated February 4, 1938, and the appraisement entry February 10, 1938.

This state of the official documents is explained, at least in part, by the testimony, which is short. We will, therefore, set out that portion of the same which relates to the preparation by plaintiff's agents of the documents, as follows:

Q. What is your occupation?—A. I am manager of Guy B. Barham Company.
Q. How long have you been engaged in that occupation?—A. Nearly fifteen years.

Q. I show you the entry papers and invoice covered by this protest and ask you whether or not you are familiar with those papers?—A. I am.

Q. Did you supervise the preparation of those entry papers?—A. Yes, sir.

Q. Please relate the facts in connection with the filing of those entries, as they occurred from the time the documents were received in your office.—A. On August 5, 1936, we filed appraisement entry No. 53 and were granted a permit.

Q. Why did you file appraisement entry No. 53?——

Mr. McGrath. Objected to as self-serving and calling for a conclusion. Furthermore, he is talking from papers not in evidence.

Judge Brown. Overruled.

Mr. McGrath. Exception.

The Witness. Because I had knowledge of the casualty on that vessel.

By Mr. Gottfried:

Q. Casualty by fire?—A. By fire.

Q. Is this the appraisement entry you filed (showing paper to witness)?—A That is.

Mr. Gottfried. I will offer that in evidence as plaintiff's exhibit No. 1.

Mr. McGrath. No objection.

Judge Brown. Mark it by consent.

(The document referred to was received in evidence and marked Exhibit 1, Protest 952776-G, of this date.)

By Mr. Gottfried:

Q. You state this appraisement entry No. 53 was accepted by the collector and a permit issued?—A. It was.

Q. Then what happened?—A. The permit was sent to the dock with a notation to the inspector to——

Mr. McGrath. He is talking about a piece of paper known as a permit, with some notations on it; it is not in evidence.

Judge Brown. He is describing the circumstances under which this happened. That is not hearsay. It is all part of res gestae. Overruled.

Mr. McGrath. Exception.

By Mr. Gottfried:

Q. You said the permit was sent to the dock?—A. Was sent to the dock with a notation to the inspector to ascertain whether or not any apparent damage was in evidence and, if there was, to send certain cases to the appraiser's stores, and if there was not to advise the collector. And subsequent——

Q. Who made that notation?—A. Mr. Ruggles.

Q. Who is he?—A. Deputy collector of customs in charge of the entry division.

Q. He made that notation to the inspector on the face of the permit?—A. Yes, sir.

Q. And you say that you saw that?—A. Yes, sir.

Q. Then——A. In fact, I transcribed it on my own copy of the entry, and the inspector advised the collector that no damage was apparent, and then we were notified that a formal entry should be filed because of no apparent damage.

Q. Was any of that merchandise at the time you speak of sent to the appraiser's stores, or was it at the dock where the inspector examined it?—A. I believe after the first permit reached the dock that part of the merchandise was sent to the appraiser's stores.

Q. But there was only the inspector's report as to no apparent damage?—A. Right.

Q. You say the collector advised you to file the dutiable entry?—A. Demanded the filing of a consumption entry.

Q. Did you file a consumption entry?—A. We did, on August 10th.

Q. Did you file that entry voluntarily?—A. No, we did not, we didn't want to file it, knowing there was damage in the entire cargo of the vessel.

Q. I show you dutiable consumption entry No. 1273, of August 10, 1936, and ask you whether that is the consumption entry you speak of?—A. It is.

Mr. GOTTFRIED. I offer that in evidence as plaintiff's Exhibit No. 2.

Mr. McGRATH. No objection.

Judge BROWN. Mark it by consent.

(The document referred to was received in evidence and marked Exhibit No. 2, Protest 952776–G, of this date.)

By Mr. GOTTFRIED:

Q. After filing a dutiable consumption entry, Exhibit 2, what happened?—A. Subsequent to the filing of both entries, I received a telephone call from the examiner at the appraiser's stores, at which time he asked why we did not file an appraisement entry on the cargo covered by that entry, and I advised him that we had filed an appraisement entry, but subsequently were requested to file a consumption entry.

By Judge BROWN:

Q. The collector first accepted your appraisement entry and then afterwards demanded the regular entry?—A. Right. On August 5th the appraisement entry was accepted, and on August 10th the consumption entry was filed. Then subsequent to the filing of both the entries the examiner called and wanted to know why we did not file an appraisement entry, advising that the brokers entering all of the other merchandise on that vessel had filed appraisement entries because of the casualty. I told him that we had filed an appraisement entry but were called upon to substitute a consumption entry for it.

Q. Then what happened? Was that the extent of your conversation with the examiner?—A. Yes.

Q. Then what happened?—A. I went back to the collector's office and asked permission to cancel the consumption entry and reinstate the appraisement entry, because it had been determined then that the merchandise was entirely damaged, the determination having been made at the appraiser's stores, and that permission was also granted.

Q. That was granted?—A. Yes, permission to cancel the consumption entry was granted.

Q. By whom?—A. By the deputy collector of customs in charge of the entry division.

Q. After that, appraisement was made on the consumption entry, was it?—A. Yes.

Q. After that?—A. After the cancellation.

By Mr. GOTTFRIED:

Q. After you had made your second petition to him and he allowed you to reinstate the appraisement entry and cancel the dutiable entry, the appraiser thereupon went and appraised the merchandise on the basis of the consumption entry?—A. Yes.

By Judge BROWN:

Q. That happened after they had granted you permission to go back to the appraisement entry?—A. Yes, sir.

By Mr. GOTTFRIED:

Q. As a matter of fact, the appraiser at the same time also made appraisement upon the appraisement entry; is that correct?—A. Yes.

Mr. GOTTFRIED. All the appraiser's notations are in evidence.

Mr. MCGRATH. It speaks for itself.

By Mr. GOTTFRIED:

Q. Were you then required to pay the duty on the basis of the consumption entry?—A. All but a small portion of it, which was returned or refunded upon original liquidation I believe.

Q. Was any allowance made for the damage to the merchandise?—A. None.

Q. And is this the invoice upon which the merchandise was entered (showing papers to witness)?—A. It is.

Mr. GOTTFRIED. I offer this in evidence as Exhibit 3, particularly with reference to the official notations thereon, with particular reference to the notations on Form 6417.

Mr. MCGRATH. No objection.

Judge BROWN. Mark it by consent.

Three exhibits were introduced in evidence. The appraisement entry, Exhibit 1; the consumption entry, Exhibit 2, attached to the summary of entered value; and kindred papers, Exhibit 3. The testimony relates to two permits. However, only the consumption entry permit is with the official papers. Apparently the permit and any other documents filed with the appraisement entry were withdrawn.

It appears clear not only from the testimony but from the notation made on the consumption entry permit, which was not received in the customhouse at San Pedro, Calif., until August 10, that the examination and appraisement of the merchandise in question as initiated by the appraisement entry, was proceeding in accordance with the statute, because the red-ink notation on the consumption entry permit states:

On Aug. 6, 1936 Apprs. # 53 was received at dock with instructions to send

1 pkg. Ex. 1/2
1 pkg. Ex. 3/6 } to Apprs.

#1 and #6 was sent on this date to apprs.

(Signed) H. E. WILLIAMS,
*Inspector.*

The court must, therefore, determine whether the collector had authority to cancel the appraisement entry and to compel the importer to file a consumption entry. If he had no authority to do so, then the circumstance that a *de facto* appraisement was made on the consumption entry would not prevent the appraisement made at a later date from becoming the proper appraisement. If the consumption entry was made under duress and was voidable because of that fact, an attempted appraisement thereunder would likewise be voidable. The statute, so far as relates to the issue here, reads as follows:

SEC. 498. ENTRY UNDER REGULATIONS.

(a) AUTHORIZED FOR CERTAIN MERCHANDISE.—The Secretary of the Treasury is authorized to prescribe rules and regulations for the declaration and entry of—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(2) Merchandise damaged on the voyage of importation, by fire or through marine casualty or any other cause, without fault on the part of the shipper.

Under authority of that section regulations have been promulgated, which, so far as applicable, are as follows:

Customs Regulations 1931.

Art. 338 \* \* \*

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(e) The entry shall be forwarded to the appraiser who shall report the result of his appraisement on the entry and duties shall be assessed in accordance therewith, but the importer may substitute an entry for warehouse at any time within one year from the date of importation.

It is established by the record that instead of permitting the appraisement to proceed as originally initiated, the collector had some sort of an examination made on the dock by an inspector. It was claimed in the testimony that the inspector filed a report pursuant to directions that had been endorsed on the permit issued. The permit not having been produced, neither the directions nor the inspector's report are before the court. However, it is clear from the testimony of the witness that such action was taken. We may assume then that from the entry received the collector conceived the idea that a consumption entry should have been made, and acting on that assumption he directed the making of what subsequently became consumption entry 1273.

The testimony, supported by notations above referred to, shows that application was made to the collector for the cancelation of the consumption entry and that such application was granted and the entry apparently was canceled. But, be that as it may, the testimony, uncontradicted as it is, is to the effect that the consumption entry was made under duress. No authority has been presented to the court nor have we been able to find any that warrants the cancelation of the appraisement entry. The statute authorizes the amendment of entries under certain conditions, but there appears to be no law or regulation warranting the cancelation of the same. Nor does it appear that there could be any good reason for the cancelation of a consumption entry. Why it could not have proceeded to an appraisement, which was done, even though the merchandise had been found to be of value, does not appear. The consumption entry having been made under duress, under the ruling of *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T. D. 31007, reaffirmed at page 478 of the same volume, it is held invalid. See also the case of *B. M. Reeves Co., Inc.*, v. *United States*, C. D. 3. The consumption entry being

invalid and, as stated above, there appearing no legal authority for canceling the appraisement entry, we hold that liquidation should have been had on the basis of the appraisement there made, that being the final legal appraisement.

Judgment will be rendered accordingly. It is so ordered.