### UNITED STATES v. KENWORTHY.

(Circuit Court of Appeals, Third Circuit. June 3, 1895.)

#### No. 4.

1. CUSTOMS DUTIES—COMMISSION—REV. ST. § 2907—ACT MARCH 3, 1883—POWERS OF CUSTOMS OFFICERS.

In determining the dutiable market value of imported merchandise, it is within the authority of the designated customs officers, under Rev. St. § 2902, and Act March 3, 1883, § 7, to inquire into the origin of disputed items claimed by the importers to be commissions and charges, and to ascertain whether they are truly such, or part of the wholesale price which the importers paid for the merchandise.

2. SAME—CONCLUSIVENESS OF VALUATION.

It appearing to the customs officers that certain wool purchased from M. & Son, in Glasgow, for importation by K. & Bro., had previously been

sold by other persons to M. & Son, and a commission paid by M. & Son upon their purchase; that the price paid by K. & Bro. included such commission; and that they also paid their brokers a commission on their purchase of the wool,—those officials, in determining the dutiable market value of the wool, refused to treat the commission paid by M. & Son in the prior and independent transaction as a "charge," within section 7 of the act of March 3, 1883, and took into consideration the fact that that commission was a part of the price which the importers paid for the wool. *Held* that, in the absence of fraud, their decision and valuation were final and conclusive.

3. SAME.

Upon the facts so found the commission paid by M. & Son on their prior purchase was not a "charge," to be excluded in ascertaining value within the meaning of the act of March 3, 1883, § 7.

In Error to the District Court of the United States for the Eastern District of Pennsylvania.

This was an action by the United States against John Kenworthy, surviving partner of T. Kenworthy & Bro., to recover duties. At the first trial the court directed a pro forma verdict for the government, reserving the right to enter judgment for the defendant after argument. Upon argument, the court directed a new trial (59 Fed. 570), upon which a judgment was entered for the defendant. Plaintiff brings error. Reversed.

Ellery P. Ingham, for the United States.

Leonard Myers, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and BUFFINGTON, District Judge.

ACHESON, Circuit Judge. On June 19, 1884, T. Kenworthy & Bro. imported into the United States, at Philadelphia, by the steamship Phoenecian, from Glasgow, a lot of wool, 24,238 pounds. Schedule K of the tariff act of March 3, 1883 (22 Stat. 488, 508), under which this merchandise was dutiable, provides:

"Wools of the third class, the value whereof, at the last port or place whence exported to the United States, excluding charges in such port, shall be twelve cents or less per pound, two and a half cents per pound; wools of the same class, the value whereof, at the last port or place whence exported to the United States, excluding charges in such port, shall exceed twelve cents per pound, five cents per pound."

The entire value, as stated by the importers, was £596. 14s. 10d., which, if correct, entitled the wool to come in on the payment of a duty of 2½ cents per pound. The dutiable value of the wool, however, was raised by the appraiser, and fixed by him at a sum which subjected the wool to a duty of 5 cents per pound. The duty having been assessed by the collector in accordance with the report of the appraiser, the importers asked for a reappraisement of the wool; and thereupon the collector selected a merchant appraiser, who acted conjointly with the general appraiser, agreeably to the provisions of section 2930 of the Revised Statutes. The merchant appraiser and the general appraiser were unable to agree, and they submitted to the collector two separate reports, showing different appraisements. The collector sustained the appraisement made by the general appraiser, under the authority conferred upon him by section 2930,

which provides that, in case the merchant appraiser and the general appraiser shall disagree, "the collector shall decide between them; and the appraisement thus determined shall be final, and be deemed to be the true value, and the duty shall be levied thereon accordingly."

By section 2902 of the Revised Statutes it is made "the duty of the appraisers of the United States, and every of them, * * * or of the collector, * * * as the case may be, by all reasonable ways and means in his or their power, to ascertain, estimate, and appraise the true and actual market value and wholesale price, any invoice or affidavit thereto to the contrary notwithstanding, of the merchandise, at the time of exportation"; and, by section 2922, "the appraisers or the collector, * * * as the case may be, may call before them and examine upon oath any owner, importer, consignee, or other person, touching any matter or thing which they may deem material in ascertaining the true market-value or wholesale price of any merchandise imported, and require the production, on oath, to the collector or to any permanent appraiser, of any letters, accounts, or invoices, in his possession relating to the same." By section 2907, in determining the dutiable value of merchandise, there was to "be added to the cost, or to the actual wholesale price or general market-value, * * * the cost of transportation, shipment, and trans- shipment, with all the expenses included, from the place of growth, production, or manufacture * * * to the vessel, * * * the value of the sack, box, or covering of any kind in which such merchandise is contained; commission at the usual rates, but in no case less than two and a half per centum; and brokerage, export duty, and all other actual or usual charges for putting up, preparing, and packing for transportation or shipment." The seventh section of the act of March 3, 1883, however, repealed section 2907 and section 2908, and further declared: "And hereafter none of the charges imposed by said sections or any other provisions of existing law shall be estimated in ascertaining the value of goods to be imported, nor shall the value of the usual and necessary sacks, crates, boxes, or covering of any kind be estimated as part of their value in determining the amount of duties for which they are liable."

The controversy here relates to the action of the general appraiser and the collector with respect to an item among the "charges" in the invoice as presented by the importers to the customhouse. That invoice, upon its face, shows that the importers paid for the wool, net £636. 5s. 2d., including £10 for cost of bags and all charges. Among these charges, as set down in this invoice, is the item, "Commission, 2½ per cent.," amounting to £15. 2s. 11d. Now, in appraising the wool, the general appraiser and the collector each decided that that item was not truly a charge, but that in fact it was part of the price which the importers paid for the wool, and they took that fact into consideration in determining the value of the wool. That this is the true state of the case, and that the United States officials did not, as is asserted, add to the actual market value or wholesale price of the wool the alleged commission for the purpose of customs duty, is clearly shown, we think, by this record.

Upon the trial, the government put in evidence a letter addressed to the collector by the general appraiser, and which accompanied his report or certificate of appraisement. In the course of that letter the general appraiser states:

"The importers produced an affidavit or declaration of Alexander Campbell, of the firm of R. & A. Campbell, of Glasgow, with a copy of an invoice from the said firm to B. H. Moore & Son annexed, showing a prior sale of the wool in question, from them, as agents of other parties, to the said Moore & Son, and upon this they (the Campbells) charged a commission of 2½ per cent. Moore & Son, as the papers and testimony show, sold the wool to the importers at a price including this so-called 'commission,' under the following circumstances: The importers had directed their brokers to purchase 100 bags of wool for them at a price which would entitle the same to entry here at a duty of 2½ cents per lb. I am satisfied that they did this in good faith, and without any intention to defraud the revenue; but while they admit that they actually paid Moore & Son about 12²³/₁₀₀ cents, or nearly 12¼ cents, per pound for the wool over and above all other charges, they claim that this so-called 'commission,' under a prior transaction between other parties, shall be deducted from the price paid, and thus reduce the same to an almost infinitesimal fraction (about ³/₁₀₀ of a cent) below twelve cents, which is the dividing line between the higher and lower rates of duty. It seems to me that such a claim cannot lawfully be allowed. Its allowance would certainly establish a very dangerous precedent. It is based solely upon a charge paid under a prior contract or sale, and which became part of the price paid for the wool by the importers, whose brokers charged a separate commission of 1½ per cent. as 'brokerage' for their services, to which no exception is taken. One of the latter, Mr. Kitching, testified that this 1½ per cent. was divided between his firm and Moore & Son (the latter receiving two-thirds thereof); and from the testimony it is clear that this was the only commission charged for any services rendered the importers by their own agents or brokers."

From this letter it appears that the evidence before the general appraiser satisfied him that the disputed item—the alleged charge— was not a commission paid by the importers to their agents, nor a commission appertaining at all to this importation, but that it was something which entered into a previous and independent transaction (the prior sale to the vendors of these importers), and constituted part of the price that the importers paid when they purchased the wool. As the appraisement made by the general appraiser was sustained by the collector, presumably the latter official, upon proper investigation, found the facts to be as above stated. Now, certainly, if such be the facts, the so-called "commission" is not the commission mentioned in section 2907 of the Revised Statutes, or a "charge," within the meaning of the act of March 3, 1883.

Was it within the lawful authority of the customs officers to inquire into the origin of the disputed item, and to ascertain whether it was a true charge, and therefore to be excluded in fixing the actual market value, or whether it was a part of the price of the wool, and to be taken into consideration in determining the true valuation? In view of the statutory provisions relating to their duties in this regard, we cannot doubt that such inquiry and determination were within the rightful power of those officers. As we have already seen, by section 2902, it is incumbent on these officials, "by all reasonable ways and means, * * * to ascertain, estimate, and appraise the true and actual market-value and wholesale price" of the imported merchandise, "any invoice or affidavit thereto to

·the contrary notwithstanding"; and, by section 2922, they may examine on:oath any person "touching any matter or thing which they may deem material in ascertaining the true market-value or wholesale price of any merchandise imported." It cannot be successfully maintained that, under the seventh section of the act of March 3, 1883, all so-called "commissions" and other charges which may be claimed by an importer are to be allowed without inquiry as to their real nature and rightfulness. Undoubtedly, it is the right and duty of those appointed and empowered to pronounce judgment upon the question of dutiable valuation to make such inquiry; and when, as the result of such investigation, the designated officials find that an alleged commission has no proper relation whatever to the importation, but that it is really part of the price of the merchandise, and they take that fact into consideration in making their appraisement, they do not transcend their rightful authority. But, if the general appraiser and the collector acted here within the limits of their statutory authority, then, in the absence of fraud (of which there is no pretense), the valuation made by the former, when confirmed by the latter, became final and conclusive. Hilton v. Merritt, 110 U. S. 97, 3 Sup. Ct. 548; Auffmordt v. Hedden, 137 U. S. 310, 11 Sup. Ct. 103; Muser v. Magone, 155 U. S. 240, 15 Sup. Ct. 77. It follows, therefore, that it was error to allow the witness Culver to testify that the disputed charge was paid as a commission, and did not enter into the price or value of the wool, for that was a question of fact, which had been finally determined by the authorized officials, and was not retriable by the jury. Muser v. Magone, supra.

We are of opinion that the court should have given peremptory instructions in favor of the government.

The judgment of the court below is reversed, and the case is remanded, with a direction to grant a new trial.