## UNITED STATES v. HERRMAN et al.

### (Circuit Court of Appeals, Second Circuit. November 7, 1898.)

### No. 30.

**1. CUSTOMS DUTIES—APPRAISEMENT—COMMISSIONS.**
　　The customs administrative act of 1890 makes the market value or wholesale price of merchandise at the time of exportation to the United States, in the principal markets of the country from which it has been imported, the criterion of the dutiable value, and there is no authority for adding a commission paid by the importer to such market value.

**2. SAME.**
　　The evidence showed that manufacturers were accustomed to sell in a foreign market to others than commission men at a fixed price, including in the price an item which they called "commission." The item so charged was the discount which the manufacturers were accustomed to allow commission merchants who purchased direct from them. There was evidence that, in buying goods of a concern which was a manufacturer and also a commission house, the price of the goods purchased of them was the same as for those of their own manufacture and for similar goods manufactured by others which they were selling on commission. *Held*, that the custom-house officers, in appraising the goods, should properly include as a part of the actual manufacturing price the entire sum paid by the importers to the commission men or the manufacturers, no part of which was properly chargeable as a commission.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This is an appeal by the United States from a decision of the circuit court (84 Fed. 151) reversing a decision of the board of general appraisers, and sustaining the protest of the importers as to the valuation for duty of certain merchandise.

D. Frank Lloyd, for the United States.

Edwin B. Smith, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. If the collector, in deciding the dutiable value of the importations in controversy, proceeded upon an appraisement by which that value was found by adding a commission to the wholesale price or market value of the merchandise in the foreign market at the time of exportation, that decision was reviewable by the board of general appraisers, under section 14 of the customs administrative act, and the decision of the board affirming the collectors' decision was properly reversed by the circuit court, because such a decision would have proceeded upon an improper construction of the law. U. S. v. Passavant, 169 U. S. 16, 18 Sup. Ct. 219.

A commission paid by the importer to his agent for services in procuring, forwarding, or caring for the goods is an item quite independent of the wholesale price of the goods at the market where they were bought. It may, and generally does, constitute an element of the cost of the goods to the importer; and, in exceptional cases, may of the market value. Muser v. Magone, 155 U. S. 240, 15 Sup. Ct. 77.

By nearly all the tariff laws in force prior to 1883, commissions were to be added to the cost, or to the actual price or general market value, of the importation, in determining dutiable value. Thus, the act of 1866 (section 9) required the addition of "commission at the usual rates, but in no case less than $2\frac{1}{2}$ per cent."; and the addition was required although the importer had paid no commission. By the act of March 3, 1883, the provisions requiring the addition of commissions were abrogated. They were not reinstated by the customs administrative act of June 10, 1890; and that act, which prescribes the rule now in force for ascertaining dutiable value, makes the market value or wholesale price of merchandise at the time of exportation to the United States, in the principal markets of the country from which the same has been imported, the criterion of the dutiable value.

As to some of the present importations, the decision of the collector was based upon the report of an appraiser, and a reappraisement by a general appraiser, and as to others upon a reappraisement by the board of general appraisers, pursuant to an application made by the importer under the provisions of section 13 of the customs administrative act.

So far as we discover in the present case, the appraisements by the appraiser, the general appraiser, and the board of general appraisers were directed to ascertaining the wholesale price or market

value of the importations in the foreign market at the time of exportation; and although these officers took into consideration the manufacturer's price for the goods in the foreign market, and a so-called commission in addition, they did so only to ascertain the real price or market value. The record does not show that a commission was added to the market value or wholesale price in the foreign market either by the general appraiser, or by the board of general appraisers.

The importations were manufactured in England by Firth & Sons, and sold by them to Henry & Co., of Bradford, commission merchants, at a price which may be called the invoice price, less a discount of 5 per cent. The importers purchased the goods of Henry & Co., paying them the invoice price, including the discount. The invoices upon which the importations were entered in this country were made up by a statement of the manufacturer's price to the English seller, and a deduction of 5 per cent. discount. The discount represented a commission or profit allowed by the manufacturers to the seller for handling and marketing the goods, and paying for them in advance. The importers claim, and it is now contended for them, that this discount is a commission which should have been deducted from the manufacturer's price, or the invoice price, upon appraisement, in ascertaining the dutiable value of the importations.

As appears by the record of the general appraiser to the collector, and by the report of the board of general appraisers to the collector, this item was in part included in fixing the actual market value or wholesale price of the importations in the foreign market at the time of exportation.

In the reappraisement by the board of general appraisers, their decision was based upon evidence showing that the importers bought the goods in controversy from Henry & Co., paying them therefor the price charged the latter by the manufacturers, including the 5 per cent. discount; upon evidence showing that manufacturers, in selling such goods in the foreign market to others than commission merchants, include in the price an item which they call "commission," thus refusing to importers or ordinary buyers the discount allowed to commission merchants; and upon evidence tending to show that purchasers of that line of goods could not buy them of the manufacturer at the prices offered by the commission houses. Mr. McCreery testified that, in buying goods of a concern which was a manufacturer and also a commission house, the price for goods purchased of them was the same for those of their own manufacture and for similar goods manufactured by others which they were selling upon commission; they charged him the same commission on their own that they did on the other goods. The evidence before the board of general appraisers also shows that although, in the case of the importations in question, the price actually paid by the importers to Henry & Co. included the 5 per cent. discount or commission, commission merchants commonly sold that line of goods at an advance of $2\frac{1}{2}$ per cent. upon the manufacturer's price to them.

Thus, the witness Newsome testified as follows:

"Question. Why do you put on an item of 2½ per cent. in selling your own goods? Answer. That I have told you I could not explain. Question. Are your advantages for doing business as good as those of Henry & Co. and Firth & Sons? Answer. Yes, sir. Question. And do you profess to do business on the same terms that they do? Answer. Yes; exactly the same terms. Question. Do you know any warrant or reason for them to charge 5 per cent. commission, instead of 2½? Answer. No. Question. Do you see any sense in the charge? Answer. I could not explain that at all. Question. Did you ever know of any man selling his own goods charging a commission? Answer. Yes. Question. Who has the commission? Answer. That goes to the firm. Question. They are selling their own goods? Answer. Yes. Question. What are they charging a commission for? Answer. That I cannot explain."

Upon evidence of this kind it was quite competent for the board to conclude that what was called "commissions" was merely an arbitrary item, which really represented a part of the market price of the goods to the ordinary purchaser in the foreign market, that a special discount was allowed to commission merchants, that the real market price of the goods was the price which ordinary purchasers buying of commission merchants were obliged to pay, and that the invoice price was composed of manufacturer's price and discount in order to permit the importer to insist that the item of discount called "commissions" was not a part of the price of the goods, and should be deducted therefrom. In reaching their conclusion as to the dutiable value of the importations, the appraisers did not add to the manufacturer's price the 5 per cent. included in the commission merchants' price, but added 2½ per cent., as representing the fair difference between the manufacturer's price to their agents or commission houses and the ordinary wholesale price or market value as between buyers and sellers generally in the foreign market.

In the Passavant Case the invoices stated certain prices as the net invoice value of the imported merchandise. That also stated certain additional sums under the heading "German Duty." The appraiser decided that the dutiable value of the merchandise equaled the sum of the net invoice value, and the "German duty" was an element of the market value or wholesale price in the foreign market. The decision proceeded upon the ground that, if it had been added by the appraiser to that price or value, the appraisement would have been open to impeachment, but as it was not, and was included only as an item entering into the estimate of the price or value, the appraisement was conclusive. The court used this language:

"The appraiser found, as a matter of fact, that the market value in Germany was equal to the invoice price plus the home duty; but he did not, therefore, include that item as a substantive item, independent of the market value, and add it thereto to make the dutiable value, though in ascertaining the market value in Germany he properly recognized the fact that that duty formed part of the purchase price in the markets of that country."

We concur in the opinion of the circuit court of appeals in U. S. v. Kenworthy, 16 C. C. A. 61–64, 68 Fed. 904–908:

"It cannot be successfully maintained that under the seventh section of the act of March 3, 1883, all so-called 'commissions' and other charges which may be claimed by an importer are to be allowed, without inquiry as to their real nature and rightfulness. Undoubtedly it is the right and duty of those ap-

pointed and empowered to pronounce judgment upon the question of dutiable valuation to make such inquiry; and when, as the result of such investigation, the designated officials find that an alleged commission has no proper relation whatever to the importation, but that it is really part of the price of the merchandise, and they take that fact into consideration in making their appraisement, they do not transcend their rightful authority."

It is not a violent presumption that the price actually paid by the importer to those of whom he buys goods in a foreign market, the price which he is willing to pay and freely pays, is the average market price, and not one 5 per cent. higher; and if the appraisers, instead of adding to the invoice price 2½ per cent. as an item "improperly deducted as commission," had added 5 per cent., they would have been quite justified in doing so by the evidence. The evidence before the board of general appraisers impresses us with the conviction that the item of "commissions," so called, is not entitled to cut any figure in the case, except as a trade device to mislead the customs officers, and be made the basis of a claim for a deduction from the real wholesale price.

These considerations lead to a reversal of the decision of the circuit court, and an affirmance of the decision of the board of general appraisers.