VANDIVER *v.* UNITED STATES (No. 1428). VANDEGRIFT & Co. *v.* UNITED STATES (No. 1433).[1]

1. DURESS.

The importers were constrained to include the commissions in dispute in the entered value of the merchandise; otherwise their entries would not have been received, but simply returned to them. This constituted duress.

2. COMMISSIONS—WHEN NONDUTIABLE.

The shippers in the Vandegrift case were purchasing agents who bought the merchandise in foreign markets on cabled orders. The commissions charged for this service and included in the invoices were true nondutiable purchasing commissions in fact and in law.

3. FAILURE TO PROTEST DURESS.

In the Vandiver case the commissions were averred to be nondutiable in character, but no claim of duress in any form was made in the protest. The protestant was called upon to impeach the validity of the entries themselves and to notify the collector of the grounds of such impeachment, and failing in this the assessment must stand.

## United States Court of Customs Appeals, April 14, 1915.

APPEALS from Board of United States General Appraisers, Abstract 35834 (T. D. 34548), and Abstract 35946 (T. D. 34571).

[No. 1428 affirmed; No. 1433 reversed.]

*Allan R. Brown* for appellants.

*Bert Hanson,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney) of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

These appeals relate to the dutiable status of certain so-called purchasing commissions. The cases were submitted together, but they will be considered separately since they differ in respect to one of their controlling issues.

The Vandegrift case will be taken up first. The merchandise in this case, being subject to ad valorem duty, was entered by the importers upon various consular invoices. These invoices were made out in the name of the alleged sellers of the merchandise and the declarations thereof were signed by alleged agents of the sellers. Each invoice contained an item of charge under the name of "commissions" and these items were included by the importers in the entered value of the merchandise. The importers nevertheless filed their protest, claiming that the items in question were merely their agents' purchasing commissions and were nondutiable in character, and that they had been constrained to include them in the entered value of the merchandise by duress exerted by the collector to that effect. They therefore claimed that the entries should be reliqui-

---

[1] Reported in T. D. 35327 (28 Treas. Dec., 641).

dated upon the basis of the entered values, less the amount of the commissions in question.

The Board of General Appraisers overruled the protest and the importers have appealed.

The last sentence of section 7 (1897) of the administrative act provides that "duty shall not, however, be assessed in any case upon an amount less than the invoice or entered value." That provision of law would be conclusive in this case except for the claim of duress which is made by the importers. This court has held that in cases wherein the importers were constrained by duress to include nondutiable commissions in the entered value of their merchandise the importers would upon proper proceedings be granted relief, notwithstanding the letter of the provision above quoted. Stein *v.* United States (1 Ct. Cust. Appls., 36; T. D. 31007; *Ib.*, 478; T. D. 31525). The first question therefore is whether the record establishes such a case of duress as should relieve the importers from the legal effect of their entries, so that they may be heard concerning the dutiable status of the items in question.

As has been stated, the disputed items are certain so-called commissions which appeared in consular invoices upon which entries were made, wherein the shippers described themselves as the sellers of the merchandise and wherein the declarations were signed by alleged agents of the sellers.

On April 30, 1902, in T. D. 23716, the department issued instructions to collectors to the effect that commissions proper, embracing any usual and reasonable compensation paid by the importer to his agent abroad for purchasing goods, were not dutiable as a part of the market value of the merchandise, but that the foreign seller of purchased goods could not charge a commission upon the sale thereof, and that so-called commissions charged by such sellers would be part of the purchase price of the goods, and therefore dutiable. The collectors were instructed, however, that if the shippers were incorrectly described as sellers of the merchandise in any invoice, either through inadvertence or ignorance, entry of the merchandise should be allowed upon a pro forma invoice with bond for the production of a corrected consular invoice; but that if an importer entered his merchandise upon a seller's invoice, uncorrected, he would not be permitted to impeach its correctness by asserting that the seller was in fact his agent. In explanation of these instructions the department cited T. D. 12008, T. D. 12375, T. D. 12464, and T. D. 16646.

It is clearly established by the testimony in this case (witnesses Hackett and Biester) that the collectors understood by the foregoing instructions that they should absolutely refuse to receive all entries of merchandise if made upon consular invoices wherein the shippers were described as the sellers of the merchandise, unless such items of

so-called commissions were added in to make market value. Under these instructions the importers were not allowed to make entry of their merchandise according to their own claim of market value, leaving the adjudication of the matter to future statutory proceedings, but they were compelled in all such cases in order to get their merchandise to add the commissions to make market value, unless they adopted the alternative of making pro forma entries of the merchandise with bonds for the production of corrected consular invoices.

This procedure was subsequently modified by instructions from the department April 23, 1903 (T. D. 24375), directing the collectors to receive the entries in such cases as tendered by the importers, even though such so-called commissions were not added to make market value, leaving it to the appraiser to correct the same in proper cases.

The goods in the Vandegrift case were entered during the interval between the two orders above cited, and it is plain from the testimony in the case that the importers were constrained to include the disputed items in the entered value of the merchandise, and that otherwise their entries would not have been received at all, but would simply have been returned to them. This was duress. The offer of an opportunity to enter the merchandise upon pro forma invoices with bond for the production of other consular invoices does not alter the situation, for the importers had a right to have their entries filed as tendered by them, and they may not have been able to procure other invoices, or even to give bond for their production.

The foregoing conclusion brings the court to a consideration of the dutiable status of the so-called commissions. If these were in fact dutiable, then the importers have suffered no injury, and are entitled to no relief. Batten & Co. v. United States (5 Ct. Cust. Appls., 447; T. D. 34975). If, on the other hand, the disputed items were non-dutiable, then the protest should be sustained.

Upon a review of the authorities it is clear that so-called commissions appearing in invoices wherein the shippers are described as sellers are open to explanation upon such invoices, and that the terms of the invoice in such case are not conclusive either upon the importer or the collector in respect to the dutiable status of such charges for commissions. It appears from the cases cited below that at times merchandise is purchased for domestic importers by their foreign agents, who pay the full market value therefor and take the title thereof in their own name, in trust, however, for their principals, charging certain commissions only for the service, and that in such cases the agents may properly describe themselves in the invoices as the sellers of the merchandise, but their commissions nevertheless would be nondutiable in character. See especially United States v. Hay (26 Fed. Cas., 1224); Alex. Smith & Sons Carpet Co., G. A. 5443 (T. D. 24721), opinion by Somerville, G. A.; Lahey & Duncan, G. A.

5472 (T. D. 24780), affirmed in 132 Fed., 181. See, generally, Opinion Attorney General (T. D. 10172½); Koedt case, G. A. 921 (T. D. 12008); Koedt case, G. A. 1147 (T. D. 12375); Hall case, G. A. 1202 (T. D. 12464); United States *v.* Kenworthy (68 Fed., 904); James case, G. A. 3249 (T. D. 16531); Rothfeld case, G. A. 3291 (T. D. 16646); United States *v.* Herrman (91 Fed., 116); Spalding case, G. A. 5254 (T. D. 24152).

The question of the dutiable status of the commissions in issue must therefore be determined from the testimony contained in the record, and since the testimony upon that subject in the Vandegrift case is brief, it will be copied here in full.

William H. Bartleman, witness:

Q. (By Mr. HACKETT.) Were you in 1902 connected with the Fern Rock Woolen Mills?—A. Yes, sir.

Q. In what capacity?—A. Assistant treasurer and manager.

Q. Are you and were you familiar with the importation of woolen yarn from Heymann & Alexander, of Bradford?—A. Yes, sir.

Q. What knowledge have you as to the services of Heymann & Alexander for charging the 3 per cent commission?—A. I handled all the correspondence, cablegrams, etc.

Q. State what this charge of 3 per cent was made for?—A. For their services in buying and shipping this yarn to us.

Q. Are Heymann & Alexander manufacturers of yarns?—A. No.

Q. Any other services other than buying and shipping this yarn for which this charge was made?—A. No; I think that covers it.

Q. (By Mr. WOOD.) How did these shippers declare on the invoices you received from them?—A. As agent of the seller.

Q. Did you buy personally the goods the subject of these protests?—A. Not personally; no.

Q. Do you go abroad to buy?—A. No; they were bought through cable and correspondence, largely cablegrams.

Q. Cablegrams to Heymann & Alexander?—A. Yes, sir.

Q. You never went abroad?—A. No, sir.

Q. All you know is from certain correspondence what their business was?—A. Yes.

Q. You don't know whether they had any business interest in the mills where these goods came from, do you?—A. I don't know that they had any.

Q. You spoke of correspondence. Are you familiar with the correspondence where the question was made as to their relations with you?—A. Yes.

Q. When the question was brought?—A. Yes; we asked them to make out the invoices in another way. We asked them to do that when the question came up.

Q. You asked them to do it for customhouse purposes?—A. Yes.

Q. Until the question arose you never raised any question as to their relations with you?—A. No, sir.

Q. Didn't you have a different understanding when this question arose as to their relations with you than before?—A. No, sir; they were only trying to get the matter straightened out.

Q. You do not know whether these people received a commission from the manufacturers or not?—A. I don't know that.

Q. The fact that they declared as agents of the seller would not inform you on that point?—A. No, sir.

Q. You ordered from Heymann & Alexander?—A. Yes.

Q. You never knew anyone else in the transaction?—A. No; simply ordered them to procure the yarn for us and they bought it.

Q. You sent the order to them?—A. Yes.

Q. How was the order made?—A. Usually by cable.

Q. Please send us so many?—A. So many pounds of whatever the code number was. We would ask them to get certain yarns for us, what we could buy them for, and get quotations on them. Sometimes we would accept the quotations and sometimes not.

Q. (By General Appraiser HOWELL.) You have no personal knowledge as to what their relation with the manufacturers is?—A. No personal knowledge, although from all I had to do with it, I have no doubt in my own mind they simply placed our orders wherever they could get the best price. They are not merchants.

Q. You know they are not merchants?—A. Yes; they are agents; they don't carry stock.

Q. (By Mr. WOOD.) Do you know of any goods of that character coming from that market where the merchandise was bought practically at the mill?—A. I don't know. We never did.

Q. You don't know where there is any market except through these dealers?—A. I don't know.

The foregoing testimony stands unimpeached and uncontradicted, and it fairly shows that the present shippers were in fact only the foreign purchasing agents of the importers, who bought the merchandise in the foreign markets for them upon their cabled orders therefor; and that the commissions which were charged in the invoices were true nondutiable purchasing commissions in fact and in law. In this respect the present case is essentially dissimilar to the case of Batten & Co. v. United States, *supra*. It must be assumed that if the facts in this case were similar to those in the Batten case this would have been shown by the Government.

In the Vandiver case, herewith submitted, a question arises upon the protest which is decisive of the case. In his protest the importer made but a single claim, namely, that the commissions were nondutiable in character. No claim of duress appeared in any form in the protest. It is true that the protest referred to two decisions of the board, viz, G. A. 5443 and G. A. 5472, but those decisions did not deal at all with the subject of duress.

We think that the present protest was defective in this particular. An essential function of the protest in this case was to impeach the entries which had been made by the importers. So long as those entries remained unimpeached the collector could not be required to look beyond them to determine the dutiable status of the items in question. Such questions would be foreclosed by the entries themselves, under section 7 of the administrative act, *supra*. Therefore the protestant was called upon as part of his case in chief to impeach the validity of the entries themselves and to advise or notify the collector of the grounds of such impeachment.

In accordance with the foregoing views, the decision of the board in the Vandegrift case is reversed and the protest therein is sustained. Reliquidation is accordingly ordered in that case upon the basis of the nondutiability of the commissions in question. In the Vandiver case the decision of the board is *affirmed*.