UNITED STATES *v.* S. S. KRESGE CO., B. SHACKMAN & CO., S. S. KRESGE COMPANY, RICE & CO., CORP., STRAUSS-ECKHARDT CO., INC., F. W. WOOLWORTH CO. (No. 4185)[1]

[1] C. A. D. 39.

United States Court of Customs and Patent Appeals, February 14, 1939

*Webster J. Oliver*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney, of counsel), for the United States.

*Sharretts & Hillis* (*Edward P. Sharretts* of counsel) for appellees.

[Oral argument December 9, 1938, by Mrs. Bennett and Mr. Edward P. Sharretts]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, in reappraisements 112043–A, 112045–A, 112146–A, 112282–A, 113038–A, 113040–A, and 113468–A.

The involved merchandise, consisting of Christmas-tree ornaments, was exported from Germany and imported into the United States during the latter part of 1935. It was entered at the manufacturers' list prices, plus 2½ per centum packing charges. Purchasing commissions of 10 per centum, specified on the invoices as nondutiable, were not included in the entered values.

The entered values were advanced by the local appraiser, and the importers appealed for reappraisements.

Considerable evidence was introduced by the parties.

The trial court, Sullivan, Judge, presiding, held that the entered values were the correct dutiable values of the merchandise, and, on appeal, the appellate division of the Customs Court, in an opinion by Tilson, Judge, affirmed the judgment of the trial court.

The trial court and the appellate division of the Customs Court concurred in holding that the evidence of record established that the "Sonneberg-Lauscha district, in the State of Thuringia" was the principal market in which the involved and like merchandise was bought and sold in Germany; that all of the manufacturers of such merchandise were located in that district; that the manufacturers (frequently referred to in the record as "homeworkers") manufacture the merchandise either in their homes or in small factories; that they freely offer for sale and sell their merchandise for cash on delivery to commissionaires and dealers in wholesale quantities, either for home consumption or for export to the United States, at prices which, by virtue of a governmental decree, may be higher but not lower than certain

established catalog prices (identified in the record as Exhibit EEE); that the commissionaires buy for their customers and pay the manufacturers the catalog prices; that they charge their customers such prices, plus 2½ per centum packing charges, plus a purchasing commission of 10 per centum; that the dealers pay the manufacturers the catalog prices, and *usually dispose of the merchandise on a commission basis of 10 per centum*, plus 2½ per. centum for packing; that occasionally the dealers buy the merchandise on their "own account," and resell the same *for cash on delivery* to retailers in Germany on the basis of 10 per centum *profit*, plus 2½ per centum for packing; that, in a few instances, the dealers sell *on credit* to retailers at the manufacturers' catalog prices, plus a *profit* of more than 10 per centum; that the sales made by the dealers, either for cash or on credit, are fugitive and not in the ordinary course of trade; that the foreign values and the export values at the time of the exportation of the involved merchandise were the same, to wit, the catalog prices charged and received by the manufacturers, plus 2½ per centum packing charges; that the 10 per centum purchasing commission charged by the commissionaires and so-called "dealers" is not a proper part of either foreign or export values; and that as the merchandise was entered in the instant cases at the manufacturers' catalog prices, plus 2½ per centum packing charges, the entered values are the dutiable values of the merchandise.

Foreign and export values are defined in subdivisions (c) and (d) of section 402 of the Tariff Act of 1930 as follows:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

It is contended here by counsel for the Government that the appellate division of the Customs Court erred as a matter of law in holding that the manufacturers' catalog prices, plus 2½ per centum packing charges, are the foreign and export values of the merchandise. In explanation of their position, counsel for the Government state that the manufacturers' catalog prices merely cover costs of raw materials

and labor charges, and do not include the manufacturers' profits, costs of containers, or general expenses; that the manufacturers did not sell, nor offer for sale in the principal markets of Germany; merchandise like that here involved *to all purchasers* at the catalog prices; that the only purchasers at catalog prices were dealers and commissionaires; that the appellate division of the Customs Court erred in not finding and holding that, in .the ordinary course of trade in the principal market of Germany, merchandise like that here involved was freely offered for sale and sold by the commissionaires and dealers at varying prices, all of which were higher than appellees' entered values, and that the commissions and profits of the dealers and commissionaires are a proper part of foreign and export values.

Both the trial court and the appellate division of the Customs Court found, and their findings are supported by some substantial evidence, that, although the manufacturers could not legally sell at prices lower, they could legally sell at prices higher, than the established catalog prices, and that the involved and like merchandise was freely offered for sale at the catalog prices by the manufacturers to all purchasers in the principal market of Germany in the usual wholesale quantities and in the ordinary course of trade. We are unable to hold, therefore, that the involved and like merchandise was not freely offered for sale by the manufacturers at the catalog prices to all purchasers in the usual wholesale quantities and in the ordinary course of trade. See *United States* v. *Michele Diagonale*, 22 C. C. P. A. (Customs) 517, T. D. 47497.

A purchasing commission, charged for the handling of merchandise, is not a proper part of dutiable value. *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T. D. 31007; *United States* v. *Bauer et al.*, 3 Ct. Cust. Appls. 343, T. D. 32627; *Vandiver* v. *United States*, 6 Ct. Cust. Appls. 80, T. D. 35327. Profit, however, as distinguished from a purchasing commission, is one of the essential elements of either foreign or export value, and is, therefore, a proper part of dutiable value. *Muser* v. *Magone*, 155 U. S. 240; *Batten & Co.* v. *United States*, 5 Ct. Cust. Appls. 447, T. D. 34975. Accordingly, if the evidence of record establishes that the sales for cash on delivery, made by the dealers in Germany to retailers for home consumption, were made in the ordinary course of trade (no question is raised here as to the usual. wholesale quantities) at the manufacturers' catalog prices, plus a *profit* of 10 per centum, plus 2½ per centum packing charges, such *profit*, as well as the packing charges, should be included in determining foreign values.

We have carefully reviewed the evidence of record and are of opinion that there is some substantial evidence to support the finding of the appellate division of the Customs Court that such *sales* as were made by the dealers for cash on delivery to retailers for consumption in

Germany at the manufacturers' catalog prices, plus *profits* of 10 per centum, plus 2½ per centum packing charges, were fugitive and not in the ordinary course of trade in the principal market of Germany. Having found that those sales were not made in the ordinary course of trade, the court correctly held that they should not be considered in ascertaining either foreign or export values.

It appears from the evidence of record that the dealers occasionally sold merchandise like that here involved to retailers in Germany on long-time credits at the manufacturers' prices, plus *profits* of more than 10 per centum. The appellate division of the Customs Court found from the evidence that the prices at which such sales were made depended upon, and varied according to, the nature of the credit extended; that, in the ordinary course of trade in the principal market in Germany, the involved and like merchandise was sold for cash on delivery; and that such sales as were made by the dealers on credit were not in the ordinary course of trade, and, therefore, should not be considered in determining foreign values. There is some substantial evidence of record to support such findings of fact. We are unable to hold, therefore, that the appellate division of the Customs Court erred in holding that sales made by the dealers on credit should not be considered in the determination of foreign values.

In reappraisement cases, the jurisdiction of this court is limited to questions of law only. Accordingly, the question of whether the findings of fact of the appellate division of the Customs Court are contrary to the weight of the evidence, as counsel for the Government apparently argue, is not before us for consideration.

In view of the fact that we have hereinbefore considered all issues essential to a proper disposition of the case, we deem it unnecessary to discuss other matters referred to in the briefs of counsel for the parties.

For the reasons herein stated, the judgment is *affirmed*.