UNITED STATES *v.* COHEN & MANN

No. 4865.—Invoice dated Lodz, Poland June 30, 1938.
Certified July 1, 1938.
Entered at New York, July 15, 1938.
Entry No. 705530.

Second Division, Appellate Term

(Decided April 10, 1940)

*Webster J. Oliver,* Assistant Attorney General (*Dorothy C. Bennett,* special attorney), for the appellant.
*Barnes, Richardson & Colburn* (*Hadley S. King* of counsel) for the appellees.

TILSON, Judge: The merchandise involved in this application for review consists of wool pile fabrics exported from Poland July 1, 1938. The merchandise was invoiced at $1.47½ per yard c. i. f. New York, and was entered at $1.47½ per yard, less freight to New York, less insurance and consular fee. It was "appraised at $1.47½ per yard plus 5 per cent selling commission, C. I. F., New York. Cases and Packing included. Export value." On appeal to this court the trial judge found that the 5 per centum added by the appraiser as a selling commission was a nondutiable buyer's commission, and affirmed the entered value as the proper dutiable export value.

The question presented by this application for review is whether or not this commission of 5 per centum is a buyer's commission or a seller's commission, and consequently whether or not the same should be included as a part of the proper value of this merchandise.

It appears from the record that one Harry Feldman, of Feldman Fabrics Co. of New York, had an agreement with certain American importers to purchase for them certain merchandise in foreign countries, samples of which were to be approved by the American purchasers before Mr. Feldman placed the order with the manufacturer, and for his services in procuring such merchandise for his principals' the said Harry Feldman was to be paid a commission of 5 per centum by the American importers for whom he purchased merchandise. In performance of this agreement the said Feldman proceeded to certain foreign countries and, having found a manufacturer in Poland who was willing to manufacture the merchandise which the said Feldman's principals desired to purchase and at prices agreeable to them, samples were forwarded to the importer herein and an order was placed for the instant merchandise.

The record contains ample evidence to establish that this 5 per centum commission was actually paid to the said Feldman for the services he rendered to the American importer, and that no part thereof at any time or in any form ever passed to the manufacturer abroad from whom the importer herein had purchased these goods. The evidence also establishes that at no time did the said Feldman own or take title to the goods so purchased, but that at all times the title to said goods passed immediately from the foreign manufacturer to the American importer. There is also evidence that other American importers purchased these same goods from the same manufacturer, and that when they did so purchase them the price they paid therefor was the exact price paid by this importer, i. e., the invoiced and entered value in this case, or the appraised value, less the 5 per centum commission.

Counsel for appellant contends that the rule announced by the

Supreme Court of the United States in *Muser* v. *Magone*, 155 U. S. 240, is equally applicable in the instant case. In the *Muser* case, *supra*, the merchandise consisted of embroideries manufactured at St. Gall, Switzerland. Plaintiffs maintained a branch house at that place. The cloth on which the embroideries were stitched was purchased in the gray state by the plaintiffs at Manchester, and received in their warehouse at St. Gall. It was then sent out to various parties at St. Gall who had stitching machines, and was stitched according to patterns or designs furnished by plaintiffs, which designs had either been purchased by them in Paris, or made in their St. Gall establishment by designers employed by them. The goods when stitched were returned to plaintiffs' warehouse, and, having been examined by their employees to see if they were properly done, were sent out again to a bleacher, to be bleached. When bleached they were brought back to plaintiffs' warehouse, reexamined, cut into strips of suitable size for the American market, ticketed, boxed, and shipped. The facts in the two cases readily distinguish the same, and make inapplicable to this case the ruling in the *Muser* case, *supra*.

Counsel for appellant also relies upon the case of *Batten* v. *United States*, 5 Ct. Cust. Appls. 447, T. D. 34975, in support of the contention that the 5 per centum commission should be included as a part of the dutiable value of the merchandise in this case. An examination of said decision shows that the same was based upon a decision by the United State Circuit Court of Appeals, Second Circuit, in *United States* v. *Herrman*, 91 Fed. 116. The facts upon which the decision in the said *Herrman* decision was based are clearly shown by the following questions and answers quoted in that decision:

Question. Why do you put on an item of 2½ per cent. in selling your own goods? Answer. That I have told you I could not explain. Question. Are your advantages for doing business as good as those of Henry & Co. and Firth & Sons? Answer. Yes, sir. Question. And do you profess to do business on the same terms that they do? Answer. Yes; exactly the same terms. Question. Do you know any warrant or reason for them to charge 5 per cent commission, instead of 2½? Answer. No. Question. Do you see any sense in the charge? Answer. I could not explain that at all. Question. Did you ever know of any man selling his own goods charging a commission? Answer. Yes. Question. Who has the commission? Answer. That goes to the firm. Question. They are selling their own goods? Answer. Yes. Question. What are they charging a commission for? Answer. That I cannot explain.

The above-quoted testimony so clearly distinguishes the *Herrman* case, *supra*, and also the *Batten* case, *supra*, based upon the *Herrman* case, from the instant case that no comment is required.

In the case of *United States* v. *Kresge*, 26 C. C. P. A. 349, C. A. D. 39, the appellate court, in dealing with the question of a buyer's or purchasing commission, made the following holding:

A purchasing commission, charged for the handling of merchandise, is not a proper part of dutiable value. *Stein* v. *United States*, 1 Ct. Cust. Appls. 36;

T. D. 31007; *United States* v. *Bauer*, et al., 3 Ct. Cust. Appls., 343, T. D. 32627; *Vandiver* v. *United States*, 6 Ct. Cust. Appls., 80, T. D. 35327. Profit, however, as distinguished from a purchasing commission, is one of the essential elements of either foreign or export value, and is, therefore, a proper part of dutiable value. *Muser* v. *Magone*, 155 U. S. 240; *Batten & Co.* v. *United States*, 5 Ct. Cust. Appls., 447, T. D. 34975.

It is quite apparent from the above quotation that the Court of Customs and Patent Appeals considered the item in dispute in the *Muser* and *Batten* cases, *supra*, to be an item of profit, as distinguished from a purchasing commission, as in the instant case. The manufacturer from whom the instant merchandise was purchased received $1.47½ per yard, no more and no less, regardless of who the purchaser might be. How then can it be said that the manufacturer abroad made a profit of 5 per centum when he received no more and no less than $1.47½ per yard, and the 5 per centum commission involved was paid to Harry Feldman, as purchasing agent of the importer herein?

Another case in point here is the case of *United States* v. *Case*, 13 Ct. Cust. Appls., 122, T. D. 40958. In that case certain Irish crocheted laces were imported from Swatow, China. They were entered at $1.37 Mexican money per tael, and appraised at the invoice unit value, plus a commission of 6 per centum as to one entry and 7½ per centum as to the other. Before this court it was shown that the importer employed one T. K. Chang, to act for the firm as its agent for the placing of contract work with dealers and headworkers and for the advancement of firm funds to such dealers and workers in order to enable them to secure material for the making of the goods contracted for. In disposing of the question relating to the items of commission in that case the appellate court said:

The testimony was clear and specific that none of the goods imported were purchased from Chang and that the relation between the importer and Chang was not other than that of principal and agent.

The single general appraiser sustained the value found by the appraiser, whereupon the importer applied for a review of the general appraiser's decision.

The board of three general appraisers to which that application was assigned, after consideration of the record made before the general appraiser, reversed the decision of the general appraiser and approved the unit value of the merchandise, thereby disallowing the commission added by the appraiser and the general appraiser. From that decision the Government took the present appeal, and, in support thereof, contends that the commissions paid to Chang were a part of the market value and that the finding of the board of three general appraisers to the contrary was not supported by the evidence.

In our opinion, the finding of fact made by the board was fully sustained by the evidence, and there was no competent evidence of any kind which would have justified the board in holding that the merchandise was purchased from Chang or that he dealt with the importer in any other capacity than that of its agent.

\*　　\*　　\*　　\*　　\*　　\*　　\*

*As the uncontradicted evidence conclusively established that the additions made by the appraiser and general appraiser were commissions paid to an agent for services rendered in buying and procuring goods from others, it follows that such commissions*

*constituted no part of the value of the merchandise for appraisement purposes.* [Italics ours.]

Likewise in the instant case, it may be said with equal force that as the uncontradicted evidence conclusively establishes that the additions made by the appraiser were commissions paid to an agent for services rendered in buying and procuring goods' from others; it follows that such commissions constitute no part of the value of the merchandise for appraisement purposes.

Upon all the evidence in this case we find as a fact that the 5 per centum commission here in dispute was a buying or purchasing commission paid by the importer herein to its agent for services rendered by him in buying and procuring the instant merchandise from the manufacturer abroad, and on the authorities hereinbefore cited and quoted, we hold, as matter of law, that said commissions constitute no part of the value of the merchandise for appraisement purposes. The judgment of the trial court is accordingly affirmed. Judgment will be rendered accordingly.