(Reap. Dec. 9697)

PARAMOUNT IMPORT CO., INC., ET AL. *v.* UNITED STATES

Entry No. 792968, etc.

(Decided on rehearing [Reap. Dec. 9061] May 10, 1960)

*Barnes, Richardson & Colburn* (*Hadley S. King* and *Norman C. Schwartz* of counsel) for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector* and *Daniel I. Auster*, trial attorneys), for the defendant.

OLIVER, Chief Judge: The appeals for reappraisement, enumerated in schedule "A," hereto attached and made a part hereof, relate to certain glass beaded necklaces and other items of jewelry, or glassware, that were exported from the Jablonec District of Czechoslovakia during the months of February, March, and April 1949. Entry was made at the port of New York.

The *per se* values of the various articles are not in dispute. The sole question before me is whether an item described on the invoices as "15% buying commission" is a part of export value, section 402(d) of the Tariff Act of 1930, concededly the proper basis for appraisement of the merchandise in question. The limited issue brings into application the well-established principle that when, as here, only one item of an appraisement is challenged, the presumption of correctness as to all others is not destroyed, and, therefore, they stand as presumptively correct. *United States* v. *Fritzsche Bros., Inc.*, 35 C.C.P.A. (Customs) 60, C.A.D. 371.

Whether or not an item is a buying commission is dependent on the facts in each particular case. *United States* v. *Bauer et al.*, 3 Ct. Cust. Appls. 343, T.D. 32627. Judicial authorities are consistent to the effect that a charge for services associated with the purchase of merchandise in the foreign market, and which is not an amount that inures to the benefit of the seller, is a buying commission, which, although affecting the cost of goods to the importer, is not part of the market value of the merchandise, and, hence, is a nondutiable item. *United States* v. *Case & Co., Inc.*, 13 Ct. Cust. Appls. 122, T.D. 40958; *United States* v. *Alfred Kohlberg, Inc.*, 27 C.C.P.A. (Customs) 223, C.A.D. 88; *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T.D. 31007.

In this case, plaintiffs contend that the item in question meets the

judicial interpretation of a buying commission and, therefore, should not be included in determining statutory export value. Defendant contends that, at the time of exportation of the merchandise in question, the industry affecting the articles under consideration was nationalized by the Government of Czechoslovakia, requiring all transactions to be handled through the Czechoslovakia Glass Export Co., Ltd., a governmental agency, and that, therefore, the said invoice item is not, in fact, a buying commission, but part of the market value for tariff purposes.

The case was the subject of my decision in *Paramount Import Co., Inc., et al.* v. *United States*, 40 Cust. Ct. 672, Reap. Dec. 9061, which sustained plaintiffs' contention. It comes before me at this time pursuant to an order granting defendant's motion for rehearing (*Paramount Import Co., Inc.* v. *United States*, 40 Cust. Ct. 800, Reap. Dec. 9138).

My previous decision, Reap. Dec. 9061, analyzed in detail the evidence adduced by both parties at the original trial. To repeat the outline of that evidence would unduly lengthen this opinion. Suffice to say that the outline of the evidence, as set forth in that decision, is incorporated herein by reference. The summary of the record before me at the conclusion of the original presentation of this case appears in my previous decision as follows:

From the foregoing analysis of the record, it appears that, at the time of exportation of the merchandise in question, trade practices in the export market of the Jablonec District of Czechoslovakia were undergoing changes. Government control over all elements of trade was being developed, yet there remained effective the ordinary course of trade in which sales were made through commissionaires who acted as buying agents and received a commission for their services. Defendant's evidence (exhibit B, *supra*) includes the admission that various firms continued to export in their own names "partly because they had previously specialized in particular articles, and their organization had been geared to handle special requests." There is nothing in the record before me to indicate the foreign exporter of the merchandise under consideration was not among those firms that continued to export in their own names. On the contrary, plaintiffs' positive proof—oral testimony and documentary proof, coupled with the collection of "Purchase Order" forms—is persuasive toward the conclusion, which I find to be applicable, that employing the services of a commissionaire, such as were employed in all of the transactions involved herein, followed the ordinary course of trade during the period covered by the shipments under consideration.

At the trial on rehearing, defendant introduced certain documentary evidence which, Government counsel contends, as stated in his brief, supplies "any deficiency which may have previously existed." Following is a review of defendant's additional or supplementary evidence, so far as pertinent to the present discussion.

The "Czechoslovak Economic Bulletin" (defendant's exhibit C) released by the Czechoslovak Commercial Attaché of the Czechoslovak

Embassy in Washington, D.C., is a promotional publication, extolling the virtues of Government-controlled industry in Czechoslovakia. It has no evidentiary value in this case.

The "OPERATIONS MEMORANDUM" (defendant's collective exhibit D), from the American Consul at Prague to the Department of State, transmitted a "note" from the Czechoslovak Ministry of Foreign Affairs, advising that the Czechoslovak Glass Export Co., Ltd., was the governmental agency authorized to be exclusively engaged in foreign trade involving Jablonec goods, and concluding with the statement that "it has no longer been possible since January 1, 1949, to purchase Jablonec goods directly from the manufacturer or from other company." That conclusion, however, is not altogether consistent with the contents of a directive issued by the Czechoslovak Minister of Foreign Affairs, under date of December 28, 1948 (part of defendant's collective exhibit E), relating to items, such as those covered by the shipments in question, and stating that the authority of the Czechoslovak Glass Export Co., Ltd., would not become effective until March 1, 1949, as to transactions that were "concluded before the publication of this directive or the import or export permits for the goods were issued prior to January 1, 1949." The combination of documents just referred to tends to corroborate the report (defendant's exhibit B) offered by defendant at the original presentation of this case and stating, in effect, that there was a general trend in Czechoslovakia to nationalize the industry dealing with the production and distribution of Jablonec goods. Further evidence that Government control over Jablonec export trade was gradual and was not completely established during the period under consideration is shown by the "OPERATIONS MEMORANDUM" from the American Embassy at Prague to the Department of State (defendant's collective exhibit H), enclosing a "note," dated January 21, 1960, from the Ministry of Foreign Affairs, answering certain questions that had been presented through the American Embassy at Prague (defendant's exhibit F), pursuant to request by counsel for defendant in this case. The two questions and answers, most pertinent to the present issue, are set forth in plaintiffs' brief as follows:

Questions No. 4 and 5 posed by the American Embassy are as follows:

"(4)   During the period [January 1, 1949, to June 30, 1949], did Eduard Krause synove receive a 15% commission on the exported Jablonec goods?

"(5)   During that period, was a 15% commission actually paid to commissionaries on exports of Jablonec goods to the United States?"

The Foreign Ministry's answers are as follows:

"(4)   The 15 percent commission on the xported [sic] Jablonec goods was computed on the basis of the netto [sic] invoice and was included in the invoice.

"(5)   This 15 percent commission was actually entered in the records of the firm E. Krause synove, under National Administration."

The foregoing information, viewed in the light of all of the evidence introduced in this case by both parties, lends support to plaintiffs' contention that, during the period involved herein, Eduard Krause Synove acted as commissionaire for plaintiffs in all purchases of merchandise in the Jablonec District of Czechoslovakia, that he received, for his services, a commission of 15 per centum of the price quoted by the manufacturer, and that the manufacturer received no part of the commission.

Defendant's evidence adduced on rehearing, as hereinabove outlined, is not sufficient to warrant a departure from the conclusions reached in my previous decision. On the contrary, the documentary proof just referred to tends to confirm the findings, as stated in my earlier decision, Reap. Dec. 9061, *supra*, that "trade practices in the export market of the Jablonec District of Czechoslovakia were undergoing changes," and that "Government control over all elements of trade was being developed, yet there remained effective the ordinary course of trade in which sales were made through commissionaires who acted as buying agents and received a commission for their services."

Accordingly, I adhere to my cited previous decision and find, as stated therein, that "The factual situation makes controlling of the present issue the decision of our appellate court in *United States* v. *Nelson Bead Co.*, 42 C.C.P.A. (Customs) 175, C.A.D. 590. There, as here, the merchandise was exported from Czechoslovakia, and the sole issue was whether an item of 15 per centum buying commission should properly be considered as part of the dutiable value of merchandise. In holding that the item was not a dutiable one, the majority of the court, speaking through Judge Worley, stated as follows:

So far as the instant item is concerned, the record leaves no doubt that the merchandise was purchased through a commissionaire who performed services on behalf of the importer; that the commissionaire acted as a buying agent and received from the importer a commission of 15 per centum for services rendered; and that none of said commission inured to the manufacturer. While that item adds to the cost of the merchandise to the importer, the facts here convince us that it is a *bona fide* buying commission and, as such, does not enter into the dutiable value of the merchandise."

It is now, as it was in my previous decision, Reap. Dec. 9061, *supra*, "my considered opinion that the foregoing quotation has equal application, with the same force and effect, in the present case," and I so hold.

On the basis of the entire record now before me, comprising plaintiffs' oral testimony and affidavits, and the documents introduced by defendant at the original hearing of this case, and defendant's documentary evidence offered at the trial on rehearing, I find as matter of fact:

(1) That the merchandise in question consists of glass beaded necklaces and other items of jewelry, or glassware, that were exported from the Jablonec District of Czechoslovakia during the months of February, March, and April 1949.

(2) That, during the period covered by the shipments involved herein, such or similar merchandise was usually or ordinarily bought in the foreign market for exportation to the United States through a commissionaire who acted as buying agent, for the American importer.

(3) That, for such services associated with the purchase of the goods, the commissionaire received a commission of 15 per centum.

Accordingly, I hold as matter of law that export value, as defined in section 402(d) of the Tariff Act of 1930, is the proper basis for appraisement of the present merchandise, and that such statutory value does not include the item described on the invoices as "15% buying commission."

Judgment will be rendered accordingly.