(Reap. Dec. 10104)

MORRIS FRIEDMAN v. UNITED STATES

Entry No. 4275, etc.

(Decided November 20, 1961)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff. *William H. Orrick, Jr.*, Assistant Attorney General (*Murray Sklaroff* and *Morris Braverman*, trial attorneys), for the defendant.

DONLON, Judge: The 16 appeals to reappraisement listed on the annexed schedule A were consolidated for purposes of trial.

The merchandise is artificial flowers, product of Japan. Plaintiff was customs broker for Lafair & Sons Co., the ultimate consignee of the merchandise. Dates of entry extend from September 21, 1955, to May 15, 1957.

There is no issue before the court as to the basis on which this merchandise should be appraised. It was appraised on the basis of export value, which plaintiff accepts as the correct basis. Nor is there an issue as to most of the components of export value. There is controversy only as to one item of value, namely, the addition by the appraiser of 8 per centum to price. Plaintiff contends that 8 per centum was paid as a buying commission to a commissionaire, or buying agent, in Japan; and that, as such, it is a cost which is not properly a part of export value.

The presumption that the appraiser correctly found all components of value is challenged by plaintiff solely with respect to this alleged buying commission.

A buying commission is a cost which is not to be included in export value. The cases so hold. *Paramount Import Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 702, Reap. Dec. 9697; *Meier & Frank Co., Inc.* v. *United States*, 40 Cust. Ct. 656, Reap. Dec. 9057.

The question here is whether plaintiff has, by competent proofs, shown that the disputed payments are, in fact, buying commissions within the scope of the authorities on which plaintiff relies.

In five of the consolidated appeals, namely, numbers 278862–A, 278864–A, 278872–A, 286447–A, and 294032–A, the so-called Japanese

buying agent was Maruichi Trading Co., Ltd. In the other 11 of the consolidated appeals, it was Ito & Co.

The official papers are in evidence. Plaintiff introduced two contracts: 'One, dated November 5, 1954, with Maruichi Trading Co., Ltd.; and the other, dated July 1, 1957, with Ito & Co. Plaintiff also adduced the testimony of Mr. Theodore Lafair, who described himself as manager of Lafair & Sons Co., whose duties included "overall supervision" of its business. He "came with" Lafair & Sons Co. about December 27, 1954, and took over the files and records as a part of his duties. He has been in Japan once, in 1957. He met Mr. S. Enokida, president of Maruichi Trading Co., Ltd., three times; twice when Mr. Enokida was in the United States, and once when witness was in Japan on business in 1957. "Arrangements" with Ito & Co. were the same as with Maruichi.

The contracts are identical forms. Standing alone, they would not suffice to prove plaintiff's contention, for they state conclusory rather than evidentiary facts. Moreover, it seems doubtful that they are properly called contracts. There is no agreement on the part of Maruichi (or Ito) to perform any services, or to do anything. The language of the documents looks to the past rather than to the future.

However, Mr. Lafair was somewhat more specific in his testimony. From his own knowledge of transactions in the United States office of Lafair subsequent to December 27, 1954, where he was generally continuously in attendance 12 months of the year, and from his business trip to Japan in 1957, he testified that Maruichi (and also Ito) acted for Lafair & Sons Co. in Japan; that the merchandise Lafair purchased comes primarily from small makers grouped together and known as cottage industries; that Maruichi (and Ito) handled the preparation of shipping papers, made certain that makers could ship, that quality was up to sample, and handled letters of credit. Lafair did not buy from Maruichi (or Ito), but used them as agents.

In *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, our appeals court defined the duties of a buying agent, as follows:

It appears that the principal duties of the commissionaire, for which this commission was paid, was to receive the goods after they had been manufactured and finished, unfold and compare them with the purchase samples, purchase the cases, and pack and ship the goods. Separate charges appear on the invoice for the cases and packing. The commission would seem to be a service connected with the fulfillment of the contract, rather than a performance of any of its terms. It entered into the cost of the goods to the importer but did not become a part of their actual market value. [P. 37.]

The duties as to which Mr. Lafair testified are substantially those outlined by our appeals court in the *Stein* case, *supra*.

It is defendant's contention that the contracts introduced into evidence by plaintiff do not have sufficient probative value to support plaintiff's case. The court agrees, as stated, *supra*.

It is defendant's further contention that Mr. Lafair is not a competent witness of the matters to which he testified, because he could have no personal knowledge of Japanese transactions, not having been in Japan at the times when these goods were exported. His testimony has to do with his firm's business of buying and importing Japanese merchandise into the United States. He did not testify as to methods of Japanese manufacture, or local Japanese costs, or other such matters of which personal knowledge could be gained only in Japan. He testified as to a relationship, which was directly under his supervision as manager, between a Japanese firm and an American firm. His testimony is sufficient to overcome the presumption that the appraiser was correct in finding that 8 per centum was not a commission paid to a buying agent. Plaintiff has made out at least a *prima facie* case that the disputed costs were commissions paid to buying agents for duties performed as such.

Defendant's rebuttal consists of a Treasury Department report, dated March 2, 1956, concerning artificial flowers made by various manufacturers and shipped by Maruichi Trading Co., Ltd., to Palmer Trading Co., Ltd., not a party to this litigation.

The difficulty with this report, weighed as rebuttal of plaintiff's *prima facie* case, is that it is not concerned with the merchandise here in issue. It has to do with consular invoice shipments that are not a part of this litigation. It is an "information" report, answering specific questions as to the export price of artificial flowers. It is not a report on the relationship between Maruichi Trading Co., Ltd. (or Ito & Co.), and Lafair & Sons Co. What little the report says as to relationship seems to confirm that "Maruichi Trading Co., Ltd. buys artificial flowers" for United States importers, identifying several by name, one importer mentioned being Lafair & Sons Co., the importer here.

Moreover, Mr. Lafair testified that Lafair dealt only with Maruichi's Kobe office, never with the Tokyo office. The report is based on an investigation and conversations solely at the Tokyo office.

Defendant's brief argues that Mr. Kondo, chief of staff of Maruichi Trading Co., Ltd., at its Tokyo branch, told the investigating officer "that the invoiced 'ex-factory' price was computed by deducting 10% from the F.O.B. port price and therefore did not necessarily agree with the actual price the maker received." (Defendant's brief, p. 4.) No issue has been raised here as to the f.o.b. port price. The collector did not challenge the appraisement, which included those prices now said to have been reduced by 10 per centum; and plaintiff has accepted all elements of appraised value, save only the 8 per centum addition for buying commission.

As to the burden plaintiff has in such a situation, our appeals court said, in *United States* v. *Fritzsche Bros., Inc.*, 35 C.C.P.A. (Customs) 60, C.A.D. 371, as follows:

Of course it was the burden of the appellee to establish the true export value of the merchandise. In our opinion it has sustained that burden. It challenged the correctness of the addition by the appraiser of 8.40108 per centum to the entered value, and our decision in the case of *United States* v. *Freedman & Slater, Inc.*, 25 C.C.P.A. (Customs) 112, T.D. 49241, is authority for the propriety of such challenge. In that case we stated that while the appraisement as it comes before the trial court must be presumed to constitute in all of its items the true value of the merchandise, the one who challenged the correctness of such value may do so in respect of any of such items. Appellee challenged the item of 8.40108 per centum, and by uncontradicted evidence overcame the presumption of correctness attaching to that item. Because, however, the importer had challenged that item only and no other item of the appraisement, the presumption of correctness as to all those others is not destroyed, and, therefore, they stand as presumptively correct. [P. 62.]

While not a factor influencing this decision, the official papers show that the appraiser did accept the buying commission as to some of the merchandise shipped to Lafair by Maruichi Trading Co., Ltd., but disallowed it as to other merchandise. Nothing appears to suggest a basis for this distinction, and witness Lafair testified that the services he described were provided "all the time." (R. 13.)

On this record, I find as facts:

1. That the merchandise consists of artificial flowers, product of Japan, imported under dated entries extending from September 21, 1955, to May 15, 1957.

2. That the merchandise was purchased by Lafair & Sons Co. from small makers in Japan, known as cottage industries; that Maruichi Trading Co., Ltd., and Ito & Co. handled in behalf of Lafair & Sons Co. the letters of credit, preparation of shipping papers, and made certain that makers could ship and that quality of merchandise was up to sample.

3. That the merchandise was shipped from Japan by Maruichi Trading Co., Ltd., and by Ito & Co. to Lafair & Sons Co.

4. That the merchandise was appraised on the basis of export value under section 402(d) of the Tariff Act of 1930.

5. That plaintiff accepts export value as the correct basis of appraisement of the entry merchandise, but disputes the addition by the appraiser of 8 per centum to price in appraisement of certain merchandise.

6. That Lafair & Sons Co. paid 8 per centum to Maruichi Trading Co., Ltd., and to Ito & Co. for services above set forth in findings 2 and 3.

I conclude as a matter of law:

1. That export value, as defined in section 402(d) of the Tariff Act of 1930, is the proper basis of value for the entry merchandise.

2. That the disputed 8 per centum item was paid by the importer for services rendered under commission by buying agents and is not an item to be added to price in determining export value of the entry merchandise.

3. That the export values of entry merchandise, which was appraised with addition of 8 per centum to price, are the appraised values, less 8 per centum.

Judgment will be entered accordingly.